IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC B.,[1]

                Plaintiff,

      v.

ANDREW M. SAUL, Commissioner of Social
Security,

                Defendant.

Case No. 3:19-cv-01288-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Eric B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in April 1973, making him forty-one years old on January 1, 2015, the amended alleged disability onset date. (Tr. 14, 27.) Plaintiff has a master's degree in business administration and no past relevant work experience. (Tr. 27, 39, 50-51, 204.) In his DIB application, Plaintiff alleges disability due to, among other things, bipolar disorder, depression, posttraumatic stress disorder ("PTSD"), sleep apnea, insomnia, and irritable bowel syndrome. (Tr. 66.)

PAGE 2 – OPINION AND ORDER

The Commissioner denied Plaintiff's DIB application initially and upon reconsideration, and on May 25, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on July 11, 2018. (Tr. 35-53.) On August 29, 2018, the ALJ issued a written decision denying Plaintiff's DIB application. (Tr. 14-28.) On June 17, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-2.)

## II.   THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the

claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 14-28.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2015, the amended alleged disability onset date. (Tr. 16.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "PTSD, bipolar disorder, and anxiety[.]" (Tr. 16.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 17.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional limitations," subject to these limitations: (1) Plaintiff needs to be limited to "occasional exposure to hazards, such as unprotected heights, moving mechanical parts, and operating a motor vehicle," (2) Plaintiff needs to be limited to "work with a reasoning level of 2," (3) Plaintiff needs to be limited to work that involves only "simple and routine tasks and . . . simple work-related decisions," (4) Plaintiff can engage in no more than occasional coworker interaction and contact with the public, and (5) Plaintiff can tolerate no more than "occasional changes in routine work setting." (Tr. 19-20.) At step four, the ALJ concluded that Plaintiff had "no past relevant work" experience. (Tr. 27.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a janitor, recycle reclaimer, and hand packager. (Tr. 27.)

///

///

**DISCUSSION**

Plaintiff argues that the ALJ erred by failing to provide: (1) clear and convincing reasons for discounting Plaintiff's testimony; (2) germane reasons for discounting the lay witness testimony provided by Plaintiff's wife, Stacey B.; and (3) legally sufficient reasons for discounting the opinion of Plaintiff's treating physician, Kai Li, M.D. ("Dr. Li").[2] As explained below, the Court finds that the Commissioner's decision is free of harmful legal error and supported by substantial evidence in the record, and therefore affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

---

[2] Plaintiff also argues that the ALJ's RFC is deficient based on these errors. (*See* Pl.'s Opening Br. at 17, "Since the ALJ rejected critical evidence on Plaintiff's behalf, she could not have formulated a comprehensive RFC that accounted for all of Plaintiff's impairments and limitations.").

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 22, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ satisfied that standard here.

### 1.    Inconsistent Statements

First, the ALJ discounted Plaintiff's testimony because there were inconsistencies between statements Plaintiff made in support of his DIB application and statements Plaintiff made to his providers. (*See* Tr. 22, finding Plaintiff's statements "not consistent" with the "medical evidence and other evidence in the record" and, therefore, declining fully to credit Plaintiff's testimony, and noting that although Plaintiff testified that he does not, among other things, care for his children or watch television, Plaintiff's medical records reveal that he "spends time watching television" and "get[s] his children ready for school"). Inconsistencies between a claimant's testimony and reports to his providers is a clear and convincing reason to discount a

claimant's testimony, and was supported by substantial evidence here. (*Compare* Tr. 248, 251, Plaintiff completed an adult function report on January 2, 2017, and testified that he has "four children [he] need[s] to take care of but cannot due to [his] illness," his "wife takes care of everything day to day, including me," and his hobbies and interests have included watching television but he "do[es]n't do anything now," *and* Tr. 47, on July 11, 2018, Plaintiff testified that he does not "get[] [his kids] up and off and ready to school . . . on a consistent basis," *with* Tr. 352, on January 14, 2016, Plaintiff reported that he "sleeps about 3 or 4 hours then he gets up to take [his] kids to school," he "goes back to sleep for about 3 hours [before getting] his other child off to school," and then he "has to get his first kids from the bus," Tr. 699, on January 23, 2017, Plaintiff reported "wak[ing] up at 6AM to get the kids ready to go to school," Tr. 729, 733, on February 1 and 2, 2017, Plaintiff reported that he "gets up at 6 to get the kids off to school" and he "watch[es] a lot of movies and hang[s] out with his kids," Tr. 782, on June 8, 2017, Plaintiff reported that he "gets up at 6 AM" and "gets his children off to school," *and* Tr. 1094, on October 10, 2017, Plaintiff reported that he "has to get the kids up for school so he has to wake up early").

Accordingly, the Court concludes that the ALJ did not err in discounting Plaintiff's symptom testimony based on his inconsistent statements. *See, e.g.*, *Eblen v. Saul*, 811 F. App'x 417, 420 (9th Cir. 2020) (holding that the ALJ met the clear and convincing reasons standard, stating that the ALJ appropriately discounted the claimant's testimony based on his inconsistent statements, and noting that there were "inconsistencies between statements [the claimant] made to his providers and statements he made in support of his long-term disability insurance application").

///

### 2.    Conflicting Medical Evidence

Second, the ALJ discounted Plaintiff's testimony on the ground that it was inconsistent with the objective medical evidence. (*See* Tr. 22, finding that Plaintiff's statements are "not entirely consistent with the medical evidence," discussing several positive reports, unremarkable exams, including ones that were negative for anxiety, depression, and insomnia, and the fact that Plaintiff's primary care physician referred to his psychiatric symptoms as "manageable," and concluding by stating that Plaintiff's complaints "lack support from objective findings"). The Ninth Circuit has recognized that it is appropriate to discount a claimant's symptom testimony based on inconsistencies with, among other things, "the objective medical evidence[.]" *Eblen, 811 F. App'x at 420* (citing *Tommasetti, 533 F.3d at 1039*).

Plaintiff argues that the ALJ erred because she cherry-picked evidence that supported her findings and ignored contradictory evidence. (Pl.'s Opening Br. at 13.) In the Court's view, Plaintiff offers an alternative, rational interpretation of the record. (*See* Pl.'s Opening Br. at 13-14; Pl.'s Reply Br. at 2-4, setting forth Plaintiff's interpretation of the record). As discussed below, however, the ALJ's interpretation of the record was also rational and supported by substantial evidence in the record (i.e., more than a mere scintilla but less than a preponderance), and therefore must be upheld. *See Crawford v. Berryhill, 745 F. App'x 751, 753 (9th Cir. 2018)* (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error"); *Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)* ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Wilcox ex rel. Wilcox v. Colvin*, No. 13-2201-SI, 2014 WL 6650181, at *5 (D. Or. Nov. 24, 2014) ("Plaintiff's alternative interpretation of the evidence is insufficient to overturn the ALJ's findings.").

Indeed, as the ALJ noted in her decision, Plaintiff alleges disability due to mental health impairments, such as depression, which Plaintiff testified "keeps [him] in bed for most of the day." (Tr. 20, 42.) The longitudinal record, however, includes numerous examinations that appear largely unremarkable and not necessarily consistent with the degree of impairment alleged:

- March 4, 2015: Plaintiff was "doing well" and "getting along better with his wife," Plaintiff believed his "current medication [was] working well," Plaintiff's psychiatric exam was negative for depression, anxiety, and insomnia, and Plaintiff's mental status exam was "[u]nremarkable." (Tr. 385.)

- April 8, 2015: Plaintiff had "been doing well," Plaintiff's psychiatric exam was negative for anxiety depression, and insomnia, and Plaintiff's mental status exam was "[u]nremarkable." (Tr. 381.)

- August 3, 2015: Plaintiff was "doing well generally" despite some "ups and downs and relationship . . . 'eb[b]s and flows,'" Plaintiff's psychiatric exam was negative for depression, anxiety, and insomnia, and Plaintiff's mental status exam was "[g]enerally normal." (Tr. 369.)

- September 29, 2015: Plaintiff was able to "maintain[] his behavior generally well" despite "some mood fluctuations," Plaintiff's psychiatric exam was negative for anxiety and depression, and Plaintiff's mental status exam was "[g]enerally normal" and "[u]nremarkable." (Tr. 362-63.)

- February 1, 2016: Plaintiff's psychiatric exam was negative for depression, anxiety, and insomnia, Plaintiff had "been taking care of

things at home well," and Plaintiff's mental status exam was

"[u]nremarkable." (Tr. 345-46.)

- February 24, 2016: Plaintiff had "been doing well," "doing better," and

  "enjoying the good weather," Plaintiff's psychiatric exam was negative for

  depression, anxiety, and insomnia, Plaintiff's mental status exam was

  "[g]enerally normal" and "[u]nremarkable," and Plaintiff said it was "'the

  best [he has] felt in 2 y[ea]rs.'" (Tr. 338, 340-41.)

- March 29, 2016: Plaintiff "recently returned from a vacation during spring

  break," Plaintiff had "been doing well and his mood is good," Plaintiff

  denied manic or depressive symptoms, Plaintiff's psychiatric exam was

  negative for anxiety, depression, and insomnia, Plaintiff's mental status

  exam is "[g]enerally normal," and Plaintiff "seem[ed] to be doing well

  with Wellbutrin XL." (Tr. 334-36.)

- May 9, 2016: Plaintiff's symptoms "are manageable." (Tr. 649.)

- June 9, 2016: Plaintiff's mental status exam was largely unremarkable, Plaintiff

  exhibited some "mild dysphoria and anxiety," and Plaintiff was "being more

  active during the day with projects around the house, spending time with his kids,

  and going on walks." (Tr. 325.)

- July 6, 2016: Plaintiff was "depressed because his wife has been talking

  about getting separated," but Plaintiff's psychiatric exam was negative for

  anxiety, depression, and insomnia and Plaintiff's mental status exam was

  "[g]enerally normal" and "[u]nremarkable." (Tr. 320-21.)

///

- September 27, 2016, Plaintiff's provider noted that Plaintiff's psychiatric exam was negative for anxiety, depression, and insomnia, Plaintiff's mental status exam was "[u]nremarkable," and Plaintiff was "doing well generally [and] . . . his mood has been good generally." (Tr. 302-03.)

In light of this evidence, the Court cannot conclude that the ALJ erred in discounting Plaintiff's testimony based on his treatment record and exam results. *See Cramer v. Berryhill*, 706 F. App'x 385, 386 (9th Cir. 2017) (holding that the ALJ satisfied the clear and convincing reasons standard and stating that "the ALJ properly discredited [the claimant's] testimony based on inconsistencies with relatively mild mental status examinations"); *Loewen v. Berryhill*, 707 F. App'x 907, 908 (9th Cir. 2017) (holding that the ALJ met the clear and convincing reasons standard, noting that the claimant's testimony was not consistent with her treatment record and performance on exams, and explaining that ALJs "can consider a lack of supporting medical evidence").

### 3.    Conclusion

In summary, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom testimony. *Cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's decision to discount the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the claimant's] testimony as not credible"); *Johaningmeier v. Berryhill*, No. 3:16-cv-2027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing with the Commissioner that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

///

PAGE 11 – OPINION AND ORDER

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ "'must consider lay witness testimony concerning a claimant's ability to work.'" *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "'germane to each witness.'" *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 1:10-cv-1432-AWI-SKO, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

### B.    Analysis

Plaintiff argues that the ALJ erred by failing to provide germane reasons for discounting the lay witness testimony provided by Plaintiff's wife, Stacey B. (Pl.'s Opening Br. at 16.) The Court disagrees.

The ALJ assigned only "partial weight" to Stacey B.'s lay witness testimony. (Tr. 26.) The ALJ provided two reasons for doing so. First, the ALJ suggested that Stacey B.'s testimony was vague because she testified that Plaintiff can no longer "somewhat work-engage w/others" due to his disabilities (Tr. 226), and it was "not clear" to the ALJ that Plaintiff's inability to do so

would necessarily support a finding of disability. (*See* Tr. 26, "[Stacey B.'s] report is not given full weight because it is not clear that the claimant's apparent inability to 'somewhat work-engage w/others' precludes him from all types of fulltime work activity."). Second, the ALJ discounted Stacey B.'s testimony because she testified that her husband is "often distracted" (Tr. 225), which the ALJ suggested was inconsistent with Plaintiff's performance on exams. (*See* Tr. 26, citing Tr. 794, 822, 1430, as examples of normal attention span and concentration on exams).

The ALJ's reasons for discounting Stacey B.'s testimony were germane to her testimony. *See, e.g.*, *Hernandez v. Saul*, 808 F. App'x 425, 428 (9th Cir. 2020) (similarly finding it appropriate to discount a lay witness's testimony on the ground that it was inconsistent with objective medical evidence); *Brian H. v. Saul*, No. 1:18-cv-01731-MC, 2020 WL 1892253, at *6 (D. Or. Apr. 16, 2020) (holding that the ALJ reasonably discounted a portion of a lay witness's testimony as "vague"), *appeal filed* No. 20-35485 (9th Cir. June 2, 2020). Even if these were not germane reasons for discounting Stacey B.'s testimony, however, the Court finds that any error was harmless because Stacey B.'s testimony provides "essentially the same information" as Plaintiff's testimony, which the ALJ permissibly discounted. *See Woodmass v. Berryhill*, 707 F. App'x 432, 436 (9th Cir. 2017) (holding that the ALJ failed to provide germane reasons for discounting the lay witness' statements and finding that the error was harmless because the lay witness' "statements provided essentially the same information as [the claimant's] statements, which the ALJ permissibly discounted"); *see also DeLeon v. Saul*, 812 F. App'x 529, 531 (9th Cir. 2020) (finding that the ALJ's failure to consider lay witness testimony was harmless and noting that the claimant failed to identify testimony from the lay witness that "had not already [been] described").

### III.    MEDICAL OPINION EVIDENCE

#### A.    Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine*, 574 F.3d at 692 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

#### B.    Analysis

Plaintiff argues that the ALJ failed to provide "clear and convincing" reasons for discounting the opinion of Plaintiff's long-time treating physician, Dr. Li. (*See* Pl.'s Opening Br. at 15-16.) The specific and legitimate reasons standard applies to Dr. Li's opinion because,

unlike the non-examining state agency medical consultants, Dr. Li determined that Plaintiff was disabled.[3] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict 'the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician'" (citation omitted)); *Kilian v. Barnhart*, 226 F. App'x 666, 668 (9th Cir. 2007) ("Kilian's contention that the ALJ erred when he discounted her treating physician's opinion is flawed because the treating physician's opinion conflicted with that of a nonexamining physician, and the ALJ supported his decision with specific and legitimate reasons.").

The ALJ provided several specific and legitimate reasons for discounting Dr. Li's opinion. The ALJ noted that Dr. Li issued an opinion stating, among other things, that Plaintiff suffers from bipolar disorder, anxiety, and depression and cannot work "due to mental impairment." (*See* Tr. 24, citing Tr. 451). The ALJ assigned Dr. Li's opinion little weight because it "conflict[s] with the record as a whole, which contains generally grossly unremarkable mental status examinations[.]" (Tr. 24.) This was a specific and legitimate reason, supported by substantial evidence (*see* the examples cited throughout the ALJ's opinion and above in Part I.B.2.), for discounting Dr. Li's opinion. *See Shultes v. Berryhill*, 758 F. App'x 589, 592 (9th Cir. 2018) (holding that the ALJ met the specific and legitimate reasons standard and noting that the ALJ rejected the provider's opinion based on "largely normal mental status examinations").

Plaintiff argues that the ALJ erred in rejecting Dr. Li's opinion based on his unremarkable performances on mental status examinations because the record shows that he "often presented as depressed, anxious and fatigued throughout the period at issue." (Pl.'s

---

[3] Plaintiff acknowledges that Dr. Li's opinion conflicts with the opinions of the non-examining state agency psychological consultants. (*See* Pl.'s Reply at 8, stating that "[n]o conflicting mental opinion evidence exists form the state agency non-examining physicians").

Opening Br. at 15-16.) As discussed above, Plaintiff offers an alternative, rational interpretation of the record. The Court, however, must uphold the ALJ's findings because they are also rational and supported by substantial evidence in the record. *See Crawford*, 745 F. App'x at 753 (rejecting objections to the ALJ's findings because they "amount[ed] to advocating for alternatives to the ALJ's rational interpretation of the record and therefore d[id] not demonstrate error"). Indeed, it was reasonable for the ALJ to find that Plaintiff's largely normal mental status examinations were inconsistent with Dr. Li's opinion that Plaintiff cannot work because of his mental health impairments.

The ALJ also discounted Dr. Li's opinion because he failed to support his opinion with "persuasive explanation or references to objective evidence," and at times appeared to "not understand the instructions on the form." (Tr. 24; *see also* Tr. 481, showing that Dr. Li was asked to "[e]xplain" how Plaintiff's disabling conditions prevent him from engaging in substantial activity in certain fields such as "[r]esidual functionality" and "[s]ocial/behavioral limitations, if any," and Dr. Li answered "mentally impairment" and "mental illness with bipolar disorder," respectively; Tr. 447, demonstrating that the form asked Dr. Li about the subjective and objective evidence that supports Plaintiff's functional deficits and Dr. Li answered "cannot work" and "bipolar disorder," respectively, and that Dr. Li answered "cannot work due to mental impairment" when asked to address Plaintiff's "specific functional deficits"). It was appropriate for the ALJ to discount Dr. Li's opinion based on the lack of articulated support, especially in light of the record evidence reflecting that many of Plaintiff's mental status exams were normal. *See Tracy Lynn S. v. Comm'r of Soc. Sec.*, No. C18-1556-MLP, 2019 WL 2123718, at *8 (W.D. Wash. May 15, 2019) (holding that the ALJ met the specific and legitimate reasons standard and noting that the ALJ appropriately discounted the opinion of a physician who "provided no

explanation or support for his opinion"); *Christian v. Colvin*, No. 15-cv-05787, 2017 WL 67111, at *6 (N.D. Cal. Jan. 6, 2017) (explaining that a specific and legitimate reason for rejecting a physician's opinion is a "lack of articulated support").

Finally, in discounting Dr. Li's opinion, the ALJ noted that Dr. Li's opinion was "contradicted by the [s]tate agency determinations." (Tr. 25.) The Ninth Circuit has upheld the rejection of a treating or examining physician's opinion based, in part, on the opinion of a non-examining state agency medical consultant. *See, e.g.*, *Lee v. Berryhill*, 721 F. App'x 604, 606 (9th Cir. 2017).

Based on the foregoing reasons, the Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Li's opinion.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 18th day of September, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge